**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

Appeal of Thaddeus Lorentz }
and David H. Nelson }
} Docket No. 120-6-00 Vtec
}
}

Decision and Order

Appellants Thaddeus Lorentz and David H. Nelson appealed from several conditions imposed by the decision of the then-Planning Commission of the City of Burlington granting them approval for construction of a mini-storage facility with a detached office.

Appellants are represented by John D. Hansen, Esq. and Stephanie A. Lorentz, Esq.; the City is represented by Kimberlee J. Sturtevant, Esq.; Interested Persons Marcia L. Mason, Lynn Goldman, and Carolyn Bates appeared and represent themselves. An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge, who also took a site visit with the parties. The parties were given the opportunity to submit written requests for findings and memoranda of law. Upon consideration of the evidence, the site visit, and the written memoranda and proposed findings, the Court finds and concludes as follows.

Appellants had received major impact development approval and conditional use approval from the then-Zoning Board of Adjustment for a 600-unit mini-storage facility on an approximately 7.91-acre site at 199 Flynn Avenue in the Enterprise zoning district. The property has frontage on Flynn Avenue, and is bordered on the west and south by residential condominium or townhome developments in the Waterfront Residential Low-Density zoning district. The property is a so-called ' brownfields' site that contains a designated wetlands area and an underground stormwater culvert, and a groundwater treatment system that would continue to operate on the property. The property at present is vegetated, with large trees in the southwest area of the property, and wetlands as shown on the site plan. The proposed use is allowed in the Enterprise zoning district.

Appellants appealed the following conditions of the Planning Commission approval: 70-foot setbacks in the southwest corner of the project; additional green space at the ends of certain buildings; pitched roofs instead of flat roofs; gable end detail on two-story buildings; restriction of the hours of operation to 7 a.m. to 9 p.m. on weekdays and 9 a.m. to 5 p.m. on weekends; after-hours security lighting to be activated only by motion detectors; and wood rather than metal siding for the storage buildings. Appellants also appealed a condition that they black top all internal drives, but have since agreed to that condition. Appellants' appeal of an additional condition regarding a written release of liability, was granted on summary judgment and that condition has been eliminated.

Appellants propose to install and maintain fencing completely surrounding the property. Appellants propose to create a two-foot-high berm along the north side of the property along Flynn Avenue, broken only by the facility' s driveway which is proposed to be equipped with a gate. The berm is proposed to have black-coated vinyl fencing and landscaping installed on top of the berm to provide landscaping and screening for the project as viewed from Flynn Avenue. The primary view from Flynn Avenue of the buildings in the facility will be through the gate, with a brief view of the rooftops from Flynn Avenue as drivers approach the facility from the east.

Appellant proposes to install an office building and 22 mini-storage buildings. Each of the mini-storage building will hold units that are either ten, fifteen or twenty feet in depth. The mini-storage buildings are designated on Appellant' s proposed site plan (Exhibit 1) by the letters A through V, and will be referred to as necessary by those letters in this decision. The lot coverage proposed is 51.7%, less than the maximum lot coverage of 80% allowed under the regulations.

An existing berm at the westerly boundary of the property, and the expanse of Class III wetlands occupying most of the westerly third of the property, provide sufficient buffer between the proposal and the residential uses to the west, except for buildings S, T, U and V in the southwest corner of the proposed facility. The design and layout of these four buildings is a primary concern of the interested parties who live in the residential development to the south and west of the project. The locations of the office building and of Buildings A through R are not contested.

The office building, located near Flynn Avenue and the front gate, is proposed to have a pitched roof and is well-landscaped; its design and landscaping is not at issue in this appeal. Appellants propose hours of operation from 7:00 a.m. to 9:00 p.m., seven days a week, and that the gate would be locked with no access other than during those hours. Appellant David Nelson' s testimony at the hearing that the project would only be open to the public from 7 a.m. to 7 p.m. daily appears to have been his statement of what the Appellants would be willing to accept, rather than what they were applying for. As the Planning Commission decision appealed from granted the hours of operation from 7:00 to 9:00 p.m. on weekdays, which are the hours Appellants now request, and the City did not appeal, we will focus on Appellants' challenge to the weekend hours of operation.

Appellants propose that all the mini-storage buildings have beige metal siding, with dark green metal doors, and flat dark green roofs. Appellants only propose to landscape the northerly end of building F, directly facing the gate. The City' s position is that the buildings should have either pitched roofs or shed roofs, that both ends of buildings F, L, and M should be landscaped, and that the northerly end of buildings E, Q and P and the southerly end of building G should be landscaped, as shown on Exhibit C, and that the gable ends of those buildings with pitched roofs have suitable gable-end detailing. During trial, the parties agreed as to the locations, wattage, and types of lighting to be installed in the project. The remaining issue regarding lighting is whether the lights should be left on continuously during the nighttime hours when the business is closed, or whether the lights should be on motion detectors during those periods.

As the project proposes an allowed use for the Enterprise zoning district and meets the minimum dimensional, setback, lot coverage and other specific zoning standards, the contested conditions may only be imposed if they are made necessary by considerations under Article 6 (Design Review) and Article 7 (Site Plan Review) of the City's zoning ordinance. We take each contested condition in turn.

<u>Roof Appearance, Materials and Landscaping of Buildings A through R</u>

While the property is adjacent to residential uses in a residential zoning district, the property itself is a former industrial property in an enterprise zoning district that allows commercial and industrial uses. Uses in the area include residential buildings with pitched roofs, accessory buildings such as sheds and garages with shed roofs, and commercial and industrial buildings, some with flat roofs. Many of the older commercial and industrial buildings in the area are brick. The proposed storage unit use is a good transitional use for the property, as it is a relatively low-intensity use and relatively quiet.

The storage unit buildings are long and low, and relatively repetitious, but echo in a smaller scale the industrial and railroad history of the area between Route 7 and the lake. To provide the required relationship to the project's context (§ 6.1.10(a)) it is only necessary that the roofs visible to be glimpsed from Flynn Avenue have a mixture of shed and pitched roof types, to provide the visually harmonious relationship to existing buildings in the vicinity. (We will address buildings S, T, U and V in a separate section). Accordingly, buildings A and I shall have either shed or pitched roofs, and buildings E, F, G and H shall have pitched roofs, with gable end detailing on their northerly ends. The remaining buildings B, C, D, J, K, L, M, N, O, P, Q and R may have flat roofs as proposed by Appellants, although Appellants may install shed or gable roofs on any of these buildings as well, at their election.

Nothing in § 6.1.10(a) precludes the use of metal siding in buildings A through R. It is true that metal siding 'reads' as commercial or industrial and that it is not as 'warm' or 'welcoming' a material as wood, brick or their imitations in plastic. However, the fact that this property makes the transition between residential uses and commercial or industrial uses does not mean that the storage units must imitate or blend in with the residential materials on the neighboring property, especially as buildings A through R will not be seen from or in conjunction with the neighboring residential properties, except perhaps at a considerable distance. If metal buildings are less durable than wooden ones, or more difficult to maintain, such issues do not fall within the considerations of § 6.1.10(a). Accordingly, Appellants may use metal siding for buildings A through R. However, to relate to the context of predominantly brick or dark wooden older industrial buildings, the rear sides of buildings A (north side) and I (east side), which may be seen from Flynn Avenue through the proposed landscaping, shall be a dark brown or dark red brick color of metal siding.

Similarly, to comply with § § 7.1.6(c), 6.1.10(a), 6.1.10(b) and 6.1.10(e), green spaces are only necessary on the northerly ends of buildings E, F and G, for the purposes of landscaping and relating the project to the surroundings. The small additional green spaces proposed by the City on the south ends of Buildings F and G and on buildings L M, P and Q are negligible in relation to the size of the overall site and the green space, landscaping and vegetation to remain

on the periphery of the site and in the wetland area. They were not shown to have any appreciable benefit to the microclimate or the ability of the property to handle runoff or snow melt.

Appellants shall provide the peripheral landscaping as originally proposed to the Planning Commission (other than on the west and south edges of the area containing buildings S, T, U, and V), as they did not challenge that landscaping in their appeal. Appellants' statement of questions only challenged the landscaping requirements regarding the southwestern area containing buildings S, T, U and V, and regarding the landscaping at the ends of certain buildings, discussed below.

The black-coated fencing proposed for the Flynn Avenue side of the property will blend in with the proposed landscaping for the front of the property, and is approved.

Hours of Operation and Security Lights re Buildings A through R

Appellants challenge the condition restricting the weekend hours of operation to the hours of 9:00 a.m. to 5:00 p.m. on Saturday and Sunday. They propose hours of operation from 7:00 a.m. to 9:00 p.m. on the weekends as well as the weekdays. While traffic to the facility will be relatively low on average, because this property adjoins residential properties, it is necessary to restrict weekend hours to some extent to protect the adjacent residential uses, especially in summer when people make outdoor uses of their property.

If the area in the southwest of the property, comprising buildings S, T, U and V, had been proposed to be furnished with a separate gate, it might have been possible to restrict only that section of the property, and to allow access to the remainder of the property in the hours requested by Appellants. Without such a separation, it is necessary to restrict the hours of operation on weekends to 9 a.m. as an opening hour both on Saturdays and on Sundays, and to 5 p.m. as a closing hour on Sundays. However, a closing hour of 7 p.m. on Saturday evenings is reasonable and will not unduly disrupt the neighboring residential uses, with the additional protections discussed below with reference to the southwest area of the property.

It is important, however, that most of the after-hours security lighting only be activated by motion detectors, to avoid an unnecessary generalized sky glow from the property as a whole. Appellants may install the lighting without motion detectors on or northerly of the office, on the east end of buildings A, B and C; on the north and east sides of buildings E and F; on the north, east or west sides of buildings G, and H; and on the west side of building I, so that it is on continuously after hours. All other lighting shall be installed on motion detectors. The motion detectors and light bulbs shall be reasonably protected from vandalism and shall be tested periodically to ensure they are in operating condition. Appellants may, but are not required to place a sign at the gate, visible when the gate is closed, informing passers-by that the property is protected by hidden security lighting.

Location, Appearance, Materials, Landscaping and Lighting of Buildings S, T, U and V

Because buildings S, T, U and V are located in the southwestern area of the property near the neighboring residences, the Planning Commission imposed a much larger setback than required by the zoning regulations: 70 feet from the boundary. Appellants now propose to excavate the southwestern area of the property so that the buildings would be located approximately four feet below ground level, and to place the buildings as near as 20 feet from the westerly property line and as near as 25 feet from the southerly property line.

In order to meet the design review criteria and § 7.1.6(c), the buildings in the southwestern area of the property need not be set back as far from the property line as requested by the City, but their location must be better designed to preserve a belt of trees between the property line and the buildings, and to provide a better visual, aural and security separation of those buildings from the residential uses in the neighboring residences.

To provide an adequate level of protection to meet §§ 7.1.6(c), 6.1.10(a) and 6.1.10(b), the buildings in the southwestern area shall be redesigned as necessary to place them so that they are located no closer than thirty feet to the southern and western property lines, to avoid the die-back of existing trees between the buildings and the boundary. They shall be placed to form a shallow J shape, as shown on the following diagram, so that the rear walls of buildings V and U face the southern and western property lines and so that the buildings form a continuous wall turning the southwest corner and the northwest corner of the area, as follows:

The rear walls of buildings V and U shall be sheathed in wood or another sound-deadening material, or a dark color, and buildings V and U shall have shed roofs sloping towards the back, both to provide additional protection from the visibility of and sound of automobiles and people using those storage units. Buildings S and T may be redesigned to accommodate the requirements of this order and to provide a replacement snow storage area between building S and the northerly end of building V. All the after-hours lighting in the southwestern corner of the property shall be motion-activated.

In addition, to ensure an additional level of security for those residents from the users of Appellants' facility, Appellants shall allow the residents or residents' association responsible for the buildings directly to the south and west of buildings V and U to install motion-activated security lighting on Appellants' perimeter fencing, and to allow the motion sensors and lights to point onto Appellants' property.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that the project is hereby approved as conditioned by the Planning Commission decision, as modified above with respect to each appealed condition. If the proposal to lower the slab elevation of the southwestern area requires approval regarding its implications for stormwater and drainage, such approval is beyond the scope of this appeal.

Dated at Barre, Vermont, this 22nd day of April, 2002.

_____
Merideth Wright
Environmental Judge